DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

MARCH TERM, 1888.

THE BUILDING AND LOAN SOCIETY OF ABSECOM v. ROBERT LEEDS, WILLIAM T. CARTER, JOSEPH NOTE AND MORRIS POWDERMAKER.

1. The signing of a non-negotiable note by a third party while such note is in the hands of the maker of it, does not, when passed to the payee, import, *per se*, any contract on which a suit will lie.

2. The production of such a note, without proof other than itself, will not sustain an action against such endorser; in such case the plaintiff, with respect to such endorser, must be non-suited.

Error to Atlantic Circuit Court.

Suit on promissory note drawn by Leeds as maker, payable to the plaintiff. The note was not, by its terms, negotiable.

It appeared while the maker of the note held it, it was signed on the back by Note, Carter and Powdermaker; there was no evidence showing in what capacity they did such act. So far as related to these three last-named defendants, the plaintiff was non-suited at the trial.

For the plaintiff in error, *Peter L. Voorhees.*

For the defendants in error, *H. L. Slape.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The only question in this case is whether a note, not negotiable, signed on its back by three persons, prior to its passing to the payee, is evidence, *per se*, of a contract by such endorsers.    At the trial it was held that the note, standing alone, did not evidence what the agreement between these parties was, and consequently, with respect to these three endorsers, the plaintiff was non-suited.

Over sixteen years ago this court, in the case of *Chaddock* v. *Van Ness*, 6 *Vroom* 517, decided that the signature of a third person on the back of a negotiable note, before it was put in circulation by the maker, neither expressed nor implied, by its own intrinsic signification, any contract whatever on the part of such endorsers.    The endorsement in that case was treated as a signature in blank, over which could be written the real engagement of the party endorsing, which was to be proved by parol evidence.    Parol evidence was held to be admissible to show what the agreement between the parties was, a result which could not have been sanctioned except on the ground that the writing itself did not manifest an agreement.    If the note and the endorsement proved an agreement it followed as a matter of course that parol evidence to show the mind of the parties would have been inadmissible.

Nor was this decision a novelty in the jurisprudence of this state, for as far back as 1856 the Supreme Court had promulged a similar adjudication in the case of *Watkins* v. *Kirkpatrick*, 2 *Dutcher* 84, the same principle having been previously asserted in the case of *Crozier & Moore* v. *Chambers*, *Spencer* 256.    And it was this long prevalence of the doctrine that had a considerable and perhaps a decisive effect when the question finally arose in this court in the case referred to.    Speaking as a member of this court on that occasion, I can say that it did not then seem to me that the prin-

ciple established was either politic, or the logical deduction from the facts in proof. It seemed to me then, as now, that when a third person signs a note before it has been put in circulation by the maker, whether such signature be on its back or face, the writing should be construed as exhibiting his contract, which would have the effect of placing him as one of the makers of the instrument. This is the view taken by the courts of Massachusetts, and it has the signal advantage of reducing the transaction to the stable form of a definite written contract, instead of, as in the present case, compelling the person who has taken the paper and loaned his money upon it, to prove the real character of the affair by oral testimony, and generally by means of interested and hostile witnesses. But on the occasion referred to it seemed to me that the usage in question, and which had grown up under the sanction of the courts, was so firmly established that it could not properly be abrogated by judicial authority. That doctrine was then approved of by this court, and since then it has not seemed to me that the matter thus far was open to further discussion.

Taking, then, this as an established premise, the only inquiry is whether the endorsement made in the present instance, being on a note not negotiable, affords a ground for discrimination. Such a differentiation has been made in some instances by various courts, but upon reflection I am satisfied that the distinction thus drawn is too subtle to be safely acted upon. At best it would take out of the rule a very limited class of cases, and would, consequently, have but a scant effect. Legal regulations affecting contracts and property should be plain and well defined, and it is obvious that exceptive cases have inevitably a marked tendency to perplex and confuse the rule.

On the doctrine of *stare decisis,* I think this judgment should be affirmed.

. DIXON, J. (dissenting). The testimony in this case showed the following facts: That in December, 1877, Robert B.

Leeds bid for a loan of $500 from the plaintiff; that a rule of the plaintiff required, as security for the loan, the note of the borrower, with at least two sureties; that Leeds proposed as his sureties the defendants, Carter, Note and Powdermaker, who were satisfactory to the plaintiff; that thereupon the plaintiff's secretary drew a note in the following form:

"ABSECOM, N. J., Dec. 3d, 1877.

"Six months after date I promise to pay to the Absecom Mutual Loan and Building Association, of Absecom, five hundred dollars, with interest, without defalcation or discount for value received."

that the secretary gave the draft to Leeds, who went away to get it endorsed by the proposed sureties, and afterwards brought it back signed by himself and endorsed by them; that Leeds then delivered it to the secretary for the plaintiff, and received from the plaintiff the $500.

On this testimony, in an action by the plaintiff to recover the $500 from the sureties, the trial court ordered a non-suit, whereupon the plaintiff sued out this writ of error.

The ground of the non-suit was: That if one who is not the payee of a note puts his signature upon the back of it before it is endorsed by the payee, that alone is not, in this state, evidence of any agreement on his part with regard to the payment of the note, but the party seeking to hold him must produce other evidence to show that his purpose in so signing was to become bound as maker, as endorser, as guarantor or as surety; and it was considered that in this case there was no evidence beyond the mere signatures.

The foregoing legal proposition does not seem to me to be maintained by the decisions in New Jersey. The cases cited in its support are *Chaddock* v. *Van Ness*, 6 *Vroom* 517; *Hayden* v. *Weldon*, 14 *Vroom* 128; and *Watkins* v. *Kirkpatrick*, 2 *Dutch.* 84, and notes.

In Chaddock *v.* Van Ness the questions presented related to the competency of oral testimony to prove that the defend-

ant, who appeared upon the note to be its second endorser, was in fact liable to the payee, whose signature was also endorsed upon it, and the decision was that such testimony could be received, and that when by such testimony the defendant was shown to have endorsed the note before its delivery to the payee, for the purpose of becoming a surety of the maker, he was responsible to the payee as a maker. This decision did not involve the proposition now advanced.

In Hayden v. Weldon the facts were that sometime *after* the note had been delivered to the payee, the defendant, at the request of the *maker*, and *without any consideration*, wrote his name upon the back of the note, and that subsequently, before the maturity of the note, it was endorsed by the payee to the plaintiffs, for value. The court held, first, that the defendant was not a maker of the note, because he did not participate in its creation; second, that he was not liable as guarantor, because his signature was given without consideration, and therefore was not obligatory between the original parties, and a contract of guaranty is not negotiable, so as to be of more avail to the assignee than to the assignor; and third, that the plaintiffs might, by proper steps, have charged the defendant as second endorser. These rulings are quite different from that now under consideration.

In Watkins v. Kirkpatrick the defendant had put his name upon the back of the note at its inception as surety for the maker to the payees; the payees had then endorsed it generally and had it discounted; at maturity it was not paid, and due notice of dishonor was given the defendant; the payees then took it up, wrote beneath their endorsement the words "without recourse," and passed the note to the plaintiffs, for value; the court decided that the plaintiffs could recover of the defendant as endorser, although he would be without recourse to the payees. There is no support here for the position taken below.

In the notes to Watkins v. Kirkpatrick are mentioned the cases of Ackerman v. Westervelt, in the Supreme Court, and Jacques v. Knight, in the Mercer Circuit of this state.

Ackerman *v.* Westervelt presented substantially the same question as Chaddock *v.* Van Ness, and was similarly decided.    In Jacques *v.* Knight it was ruled that a blank endorsement by the *payee* on a note *not negotiable* does not *per se* render the endorser liable, but parol evidence is admissible to prove that the endorsement was intended as a guaranty. This decision approaches the pending case more nearly than any other of those cited, but still differs from it in this important respect, that such an endorsement by the *payee,* the apparent owner, can be accounted for as a mere means or evidence of transfer, without ascribing to it the character of an executory contract, while an endorsement by a stranger cannot have been so intended.

I conclude that there is no decision in the reports of this state which requires this court to affirm the doctrine contended for by the defendants in error.

In Chaddock *v.* Van Ness there are *dicta* which favor their contention.    The learned justice who delivered the opinion of this court in that case said:  " The first endorsement of a note by a person not the payee, *per se,* creates no implied or commercial contract whatever.    *    *    *    Whether any contract was made, and what the character of that contract is, must be determined by the intention of the parties, as ascertained by parol evidence of the circumstances under which the endorsement was made.    *    *    *    No contract arises except from such evidence."    For these remarks no other authority is cited than *Crozier* v. *Chambers, Spencer* 256, where a *dictum* of Chief Justice Hornblower appears, to the effect that "the mere signature of such third person on the back of a note, *per se,* creates no commercial contract whatever."    That the learned jurist last named did not, by this utterance, mean all that is now claimed, is made manifest by his statement almost immediately following, that " in the absence of all evidence to the contrary, the legal presumption would be that the party put his name on the note for the mere purpose of giving it the credit of his name as second endorser, and nothing more," and by his reference to three cases in which this legal presumption

was enforced. Taking all this language together, its purport seems to be that in the absence of any evidence leading to a different inference, the law will assume that the third party, by endorsing the note, did not *ipso facto* contract, but only authorized the holder to subject him to the liability of a second endorser by an appropriate transfer of the note. This view appears to have the substantial assent of Mr. Justice Ryerson, who, in *Watkins* v. *Kirkpatrick*, 2 *Dutcher* 84, 89, declared that in the absence of extrinsic evidence, the law would imply that a stranger so endorsing a negotiable note had contracted to become its second endorser; and of Mr. Justice Knapp, who, in *Hayden* v. *Weldon*, 14 *Vroom* 128, 130, said such a signature imported the contract of second endorser.

If the *dicta*, in Chaddock *v.* Van Ness, are to receive the same interpretation, then they are easily defensible, but if they mean that, unless other circumstances than the fact and the time of signature appear to show the purpose of the signer, the courts will deem the signature of no effect whatever, then I think they are without support, either in authority or in reason.

To show how generally the authorities are against such a proposition, it must suffice to quote the language used in *Good* v. *Martin*, 95 *U. S.* 90, where it was adjudged not error, to charge a jury that if the defendant, without making any statement of his intention in so doing, wrote his name on the back of a negotiable note before its delivery to the payee, he is presumed to have done so as the surety of the maker, for his accommodation, and to give him credit with the payee, and, if such presumption is not rebutted by the evidence, he is liable on the note as maker. In delivering this judgment, Mr. Justice Clifford stated that decided cases, almost innumerable, affirm the rule thus laid down, and that while different courts hold different views respecting the character of the liability, all concur that such an act constitutes a contract which is to receive a reasonable and an available construction. Such was the declaration of the highest court in the land, six years after Chaddock *v.* Van Ness was decided.

For the unreasonableness of the proposition that the courts should give to such a signature, standing alone, no effect whatever, let any one endeavor to account for the signature upon some other hypothesis than that it was made with the purpose of contracting in some form for the payment of the note, and if he be not driven to suppose either a very unusual condition of things, as that the signature was made before the note was drawn, or a very absurd one, as that the signer wrote his name for amusement, then my experience in such matters is grossly at fault. In the great majority of instances, I am sure, such an endorsement is intended by the endorser to signify his assent to become bound in some capacity for the payment of the note, and I perceive no sensible reason for a judicial refusal to ascribe to such acts the significance which, in common experience, they almost always bear.

If, then, the signature of a third party on the back of a promissory note imports some contract for the payment of the note, it is not very difficult to determine what the contract was in this particular case. All agree that the liability incurred is that of second endorser, of maker, or of surety or of guarantor for the maker. In the present instance, it could not have been that of second endorser, for the note being non-negotiable, there is no room for the inference that the plaintiff was to pass it away as first endorser, with these defendants as subsequent endorsers. If we adopt the accepted distinction between a guarantor and a surety, it will also appear that the defendants should not be treated as guarantors. "A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. * * * On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal, and is often founded on a separate consideration from that supporting the contract of the principal." *Brandt on Sur. and Guar.*, § 1. Tested by these definitions, the defendants were not guarantors, but were sureties for the

maker. In that capacity, they should have been held re-
sponsible as makers, according to the decision in Chaddock *v.*
Van Ness.

So far the case has been considered with reference only to
the legal implications involved in the fact that the defendants
endorsed a non-negotiable note before its delivery to the payee.
If the foregoing views are unsound, there is, nevertheless,
another aspect in which it may be looked at, viz., with regard
to the inferences which the jury should have been allowed to
draw.

According to all the decisions and all the *dicta* in this state,
if there was any evidence from which the jury legally could
have inferred that the defendants endorsed this note with the
intention of becoming sureties for the maker, then the ques-
tion whether they did so intend should have been submitted
to the jury.

The direct testimony was that the maker proposed to the
plaintiff to get these defendants to endorse the note as his
sureties ; that he took the draft of the note away for the pur-
pose of obtaining their endorsement and returned with it
endorsed by them. The only requisite circumstance not
directly proved is that the maker asked the defendants to
endorse *as his sureties.* Had this also been shown, the plain-
tiff's case would have been beyond question. This circum-
stance is, I think, inferable from the facts proved.

It is a principle in the law of evidence that when there is
a question whether an act was done by a certain person, any
fact which constitutes preparation by that person for the doing
of the act is relevant testimony to make out that the act was
done. There is a probability, according to our common ex-
perience of the ordinary course of events, that preparation
will be followed by performance unless something occurs to
prevent it, and this probability will support a presumption
of performance when preparation is directly proved. *Doyle*
v. *Boston and A. R. R. Co.,* 5 *N. E. Rep.* 454.

The principle was ably defended by Chief Justice Beasley,

in delivering the opinion of this court in *State* v. *Hunter*, 11 *Vroom* 495, where appears an apt illustration for the present purpose. Armstrong, whose residence was in Philadelphia, had been found at night in Camden, murdered, and, on the trial of Hunter for the homicide, a question at issue was whether Armstrong had gone from Philadelphia to Camden that evening in company with Hunter. Testimony was admitted, for the purpose of supporting the state's contention on that question, that Armstrong had, during the day, informed members of his family that he was going to Camden with Hunter in the evening, and therefore would not be home at his usual hour. This testimony was adjudged relevant and lawful, as preparation for the act alleged, and hence legally tending to prove its performance. So here, Leeds' proposal of these defendants as his sureties, and his taking away the draft of the note, that he might ask them to endorse it as his sureties, are acts preparatory to his asking them for that favor, and therefore are legitimate evidence, tending to prove that he made such a request of them, and the jury should have been allowed to say whether they would infer that he had done so. Nay, the case was much stronger, for the proven facts just adverted to, taken in connection with the other proven fact that the defendants did endorse the note, seem, according to correct and legal rules of reasoning, to necessitate the conclusion that the defendants were asked to endorse as sureties for Leeds. For, certainly they did not endorse without being asked to do so on some ground, and the reason assigned to them must have been the true one or a false one; but if it was a false one, then fraud was practiced. Now there is no evidence of fraud or falsehood, and in the absence of evidence, fraud or falsehood cannot be imputed. *Braddock* v. *P. M. & M. R. R. Co.*, 16 *Vroom* 363. Hence it is not inferable that a false reason was assigned to them; and there remains only the true reason, which must be inferred, since some inference is required by the facts directly proven.

In my opinion, the non-suit was wrong.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, KNAPP, MAGIE, SCUDDER, VAN SYCKEL, BROWN, COLE, MCGREGOR.   10.

*For reversal* — DIXON, CLEMENT, PATERSON, WHITAKER.   4.